## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PIERO V. MELLITS<br>2906 Blueberry Lane<br>Bowie, MD 20715<br><br>*Plaintiff,*<br><br>v.<br><br>MCLAREN ENGINEERING GROUP<br>131 West 35th Street, 4th Floor<br>New York, NY 10001<br><br>*Defendant.* | Case No.: _____ |

## COMPLAINT

Plaintiff, Piero E. Mellits, by way of his attorney, Morris E. Fischer, Esq., hereby states the following complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant, McLaren Engineering Group. Plaintiff states the following in support of his Complaint:

## PARTIES

1. Plaintiff Piero E. Mellits ("Plaintiff") was employed as Director of Graduate Medical Education by Defendant, McLaren Engineering Group. ("Defendant" or "McLaren").

2. Defendant McLaren is located in the State of New York.

3. Defendant McLaren does business in the State of New York.

1

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., 42 U.S.C. § 2000(e) et. seq. and the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq. as well as pursuant to New York State Executive Law § 296.

5. At all times relevant to this case, Defendant has been an "employer" as defined by 42 U.S.C. § 2000e(b).

## CONDITIONS PRECEDENT

6. On or about October 17, 2019, Plaintiff filed a complaint with the EEOC alleging unlawful age discrimination by Defendant.

7. More than 180 days have passed since the filing of Plaintiff's EEOC complaint.

8. The EEOC issued a 90 day right to sue letter to Plaintiff on or about June 2, 2021.

9. Plaintiff has exhausted all administrative remedies prior to this action.

## FACTS

10. Plaintiff Mellits is currently 56 years old.

11. Plaintiff Mellits has well over 25 years of experience as a civil engineer.

12. Mellits worked for Defendant as a civil engineer.

13. Mellits worked for Defendant in McLaren's Baltimore, Civil Division, located at 601 E. Pratt Street, Suite 302, Baltimore, MD 21202.

14. Mellits was terminated on or about August 8, 2019.

15. The Defendant contended that the Plaintiff was terminated due to cash flow issues.

16. A company Vice President, Jeremy Billig, as an afterthought contended that Mr. Mellits violated a company procedure regarding the issuance of draft proposals to clients.

17. More specifically Mr. Billig alleged that Mellits repeatedly transmitted draft proposals to clients, thereby violating company policy on numerous occasions, despite being warned by the company to cease this practice.

18. These aforesaid allegations are totally without merit.

19. Mellits had company authority to issue draft proposals to customers provided the document stated "Draft Proposal" which he placed on the relevant proposals.

20. The company also accused him of violating confidentiality and non-compete agreements.

21. This allegation is also totally without merit.

22. The Plaintiff never violated any confidentiality agreements.

23. The Plaintiff never violated any non-compete agreements.

24. The Defendant alleged that Mellits failed to perform in accordance with company standards and expectations.

25. The Defendant alleged that Mellits failed to meet specific performance goals.

26. The Defendant alleged that Mellits' supervisors met with him on numerous occasions to discuss his failure to meet performance goals.

27. The Defendant alleged that Mellits made verbal agreements with clients without authorization from management and without informing management of such agreements.

28. The Defendant alleged that Mellits' insubordinate conduct harmed Mclaren even after his termination.

29. These aforesaid contentions are totally without basis and are untrue.

30. The Defendant contended that the Plaintiff resigned his employment.

31. That allegation is totally untrue.

32. Mr. Mellits brought over a number of his own customers when he was hired.

33. He serviced them throughout his time at McLaren.

34. The Defendant terminated the Plaintiff.

35. The Plaintiff did not resign.

36. At the time that Mellits was terminated, he was 54 years old.

### Post Termination Activity

37. Following the Plaintiff's termination, McLaren agents wiped out whatever information he had on his laptop.

38. They also removed all of his personal information from his laptop. Mr. Mellits spent four days with the IT manager (Wilson) getting the files returned via dropbox after trying to review each file.

39. McLaren stole information from the Plaintiff to attempt to secure the Plaintiff's clients.

40. Following the Plaintiff's termination, the Defendant continued to represent to a number of its clients that Mr. Mellits was still employed by McLaren.

41. Additionally, McLaren had never discontinued Mr. Mellits' McLaren email account until sometime in 2021.

42. McLaren sent emails to third parties from Mellts' account and McLaren misled these third parties into believing that Mr. Mellits is still involved in their accounts.

43. On June 12, 2020, one of Mr. Mellits' clients, from the National Association of Residential Property Managers, set up a Zoom call to discuss a particular project.

44. When the Zoom call occurred, there was a general roll call of the individuals scheduled to be on the call.

45. The name, "Rich McGill" was called out and this alarmed Mr. Mellits because Mr. McGill is a McLaren employee.

46. The client later indicated that he had an incorrect email address for Mr. Mellits.

47. This is a prime example of McLaren using Mr. Mellits' reputation to mislead clients into believing that his expertise and experience is still involved in their projects.

48. The incident also undermines the Defendant's allegations that the Plaintiff had all of these aforementioned violations of company policy, unauthorized contracts and that he misled clients.

49. In fact, it was McLaren who misled clients.

50. At the time of his termination, the Plaintiff was the oldest person in the Baltimore Civil Division.

51. The individual who first replaced the Plaintiff was not hired, rather that person was moved over from another office, a New Jersey office.

52. The individual that replaced that person in the New Jersey office was significantly younger than the Plaintiff.

53. The Defendant could have moved the Plaintiff to a different office to save the Plaintiff's job, but the Defendant didn't.

54. The person who replaced the Plaintiff did so on a temporary basis.

## COUNT I

### (Age Discrimination in Violation of the ADEA – 29 U.S.C. § 623)

55. Plaintiff adopts by reference the allegations contained in the previous paragraphs of this Complaint as though restated here in their entirety.

56. The decision to terminate Plaintiff was motivated because of Plaintiff's age.

57. The decision to terminate Plaintiff was also made with the knowledge that doing so would interfere with his rights protected under the ADEA, and thus would be in violation of federal law.

58. Accordingly, Mellits' termination from employment was an unlawful employment action in violation of the ADEA, 29 U.S.C. § 623.

59. As a result of this unlawful employment action, Plaintiff has suffered damages, and continues to suffer damages, including, but not limited to: lost wages, lost benefits, compensatory and punitive damages.

## COUNT II
## DISCRIMINATION BASED ON AGE
## PER THE NEW YORK STATE EXECUTIVE LAW § 296

60. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

61. This action is brought pursuant to the New York State Executive Law § 296 for employment discrimination on the basis of age.

62. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of his employment.

63. Other similarly situated employees not of Plaintiff's age group were not subject to the same conditions of employment as Plaintiff.

64. A causal connection exists between Defendant's actions toward Plaintiff and Plaintiff's age.

65. Defendant's aforementioned conduct reflects directly on a discriminatory attitude toward Plaintiff.

66. The three aforesaid managers of the investigative teams were not subject to the same conditions of employment as Plaintiff.

67. Defendant's actions constituted a violation of the New York State Executive Law § 296 for employment discrimination.

68. As a result of the Defendant's discriminatory conduct, Plaintiff was placed on a PIP and eventually terminated.

69. Defendant's reasons for placing Plaintiff on a PIP were pretextual.

70. Defendant's reasons for terminating Plaintiff were pretextual.

71. The true reason for Defendant terminating Plaintiff was age discrimination.

72. As a result of said discrimination, Plaintiff suffered compensatory and economic damages.

73. Plaintiff suffered physical and emotional injuries including shock, depression, anxiety and other physical symptoms.


WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant in his favor, and seeks the following relief:

   A. Reimbursement for lost wages in the form of back pay;

   B. Reimbursement for lost benefits;

C. Pre-judgment interest on lost wages and lost benefits for the period of time from date of termination to entry of judgment;

D. Compensatory damages for the losses flowing from the Defendant's illegal discrimination;

E. Punitive damages against the defendant; and,

F. All other relief as the Court deems fit.

Respectfully Submitted,

/S/ Morris E. Fischer

Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Avenue Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
morris@mfischerlaw.com
Attorney for Plaintiff

## JURY DEMAND

Plaintiff herein demands a jury for all issues to be tried in this case.

Respectfully Submitted,

/S/ Morris E. Fischer

Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Avenue Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
Attorney for Plaintiff